Welcome back to our courtroom. Good morning to you. Let's give Mr. Reeves just a second here to get organized and then we'll begin. Very good. Alright. Please then proceed. Good morning, Your Honor. It's always a pleasure to be here. I'm Mike Hartman for Plaintiff Haberman. Upon here, I want to acknowledge my colleagues, Mr. Hayes, Mr. Hindenburg, and Mr. Gross, who are with me. This case is about what happens when a practicing the prior art defense goes awry and it is about the district court trying to salvage a verdict that is faithfully inconsistent by referring to a defense that wasn't tendered, that wasn't tried. Wait a minute. Why do you say the defense, presumably meaning invalidity for anticipation, wasn't presented and wasn't tried? What I'm referring specifically to is the defense of anticipation by inherency, but I wouldn't even go so far as to say anticipation defense. That was not tried. There was no evidence put in on that. There are several reasons, Your Honor, why this defendant did not try that issue, inherency specifically, or anticipation based on… Well, before we get to the reasons why he didn't do it, I'm still struggling to figure out why you're so sure he didn't do it. Because there was no evidence on inherency put in at the trial. That is the bottom line. Normally, one would put in evidence, or one perhaps performs a test on the prior art to determine what… One might, but it's not required. Absolutely, Your Honor, you're right. But at a minimum, one would present an expert, for example, to say…  No, no, absolutely not. None of his experts, none of the defendant's experts testified on Nanti on the reference that the court chose to base its inherency argument on. How about Mr. Weiss? Mr. Weiss testified… He was your expert. He was our expert, Your Honor. And he testified on that issue, did he not? He did testify, and he testified that Nanti did, in fact, not disclose a suction operation. Well, that's not necessarily what the court said. That's not what the court said, Your Honor. You're right. And we put in our brief why that is right. And I wanted to address that point. It's on page A1432 of the appendix. The answer that is relied on is a two-word, or it's a contraction, perhaps a three-word answer where, on line 22 of A1432, where Mr. Weiss says, and then there's a period put behind it. What I will respectfully submit to you is that that is nothing more than a question that Mr. Weiss asked the questioner because he didn't understand what was being asked. He is very hard of hearing if he has these complex areas. Are you suggesting that the court reporter should have put a question mark instead of a period after the words, it's shown? In the context of this Q&A, that's exactly what I'm suggesting, Your Honor. That's exactly what I'm suggesting, and I'm pointing to the second instance in which that happened. Right on the next page, on page 1433, where Mr. Weiss repeats the question that is asked of him, and there the court reporter put a question mark. But I'm not only relying on that. Believe me, I'm not only relying on that. Mr. Hartman, not having been there, I think the trial judge was there, and the trial judge's determination was finally, Weiss conceded in a moment of candor, mistake or both, that Lamp disclosed a valve which would open under a predetermined level of suction. The jury may have concluded it was candor. We were not present at the hearing. We couldn't tell the demeanor or otherwise, but the judge was. And why was the judge wrong in making that determination in his opinion? Because there was no substantial evidence to support that, Your Honor. And when you read the transcript, Mr. Weiss repeatedly denies it. I've read it several times. Yes, and other than for those three words or two words, it's shown Mr. Weiss repeatedly denies, consistently denies that Lampley shows a suction valve. And suction, believe me, is very different. He kept referring back to Claim 1 of Lamp, sucking in Claim 1 of Lamp on the next line of 1432. Right. The claim language doesn't say anything about sucking. Is he referring to the Lamp valve as he was before? Or was he talking about Claim 1 of, was he confused about Claim 1 of the 427 patent? I think he's saying it's not a Lampley invention. It's not a Lampley patent. He's saying Claim 1 of Lampley. He keeps going back and forth. I think what he's saying is it's not a Lampley invention. It's not a claim, it's not a Lampley invention. And indeed, I'm sure you've read it. I dare you to read every word. It is not there. And not only that, Your Honor, but perhaps the other point of evidence that you ought to have in mind here is that the Brown valve, which was disclosed in Lampley's, you know, Lampley referred to a so-called Brown valve. The Brown valve. Gerber itself filed a patent application on the accused valve. A slightly different configuration of the valve, where the valve was in a module that could be removed. And they tried to patent that. And they had to distinguish over Brown. And they said in the patent office, they put it in there, how a suction operation, a suctioning valve is not shown in Brown or Lampley or anywhere else. There's a fundamental distinction between the suctioning… Well, help me understand where you're going. Are you saying because Gerber took that position in their own patent application involving a patent that's not part of this case, that therefore we have to accept that as proving what? No, you don't have to accept it as proving if so factual, anything. But it is part of the body of evidence. It is part of how an inventor, a person practicing in this art would read the Brown slash Lampley disclosure. It is certainly that. And the statement is made under oath to the patent office. It was made by Mrs. Bachman, who supposedly came up with the accused structure, the accused device. So it's not made by somebody out of context or unrelated or somehow unknowledgeable in this field. So there's no question, no question that Lampley and Brown do not disclose explicitly, especially a suction valve. Well, Judge Shabazz agrees with you on that. He seemed to conclude that it was inherently shown in the Brown or Lampley patents. And that's where we want to go next. And I submit to you that the simple question to this court, the simple question to this court is, is there sufficient evidence to support the inherency finding that the judge made? Not the jury made necessarily, but the judge made an inherency determination. We all know what the jury did. It checked the box anticipation. But assuming that what the judge said that, well, that must have meant inherent anticipation, I'm now going to find out that there is something in the record that supports that. And he sees Mr. Weiss's three words in the record as well as some other things. Three words or two words? Well, it's a contraction. I'm not sure how you count that. That phrase, that short sentence, it's shown whatever that meant. Right. Now, we have case law, of course, from this court that it doesn't matter whether somebody's practicing the prior, not practicing the prior, whether we're making an assessment of inherency. And the simple question really is, under the law of inherency, it says something must necessarily be present, necessarily be present and always be present. Is that, is there some evidence to support that in this record? And what's the it in your sentence? It has to be necessarily present. Precisely what is the it to which you are referring? The it would be a membrane with a slit, a structure that is adapted such that the liquid may be drawn from or through it by the sole application of a predetermined amount of suction. Okay, now what that simply means is that the valve opens at a certain pressure point, at a certain suction point. That's how, these are these famous spill-proof cups. For sure. The babies can wiggle around. This is the first one that ever worked. It was made by Mrs. Cableman, the British inventor, widely acclaimed. And it's apparently, I got to do all the, it's apparently a wonderful device that parents very much appreciate. But it's a simple thing, but it works great. It was the first one that works. And so the click language is, you know, a spout and a membrane, a valve in it with a slit adapted such that the liquid may be drawn from it by the sole application of a predetermined amount of suction. So what's your point that the brown, lampy membrane, if I can use that word, might have been so resistant that normal sucking force applied by a human wouldn't be strong enough to draw out the liquid? Two, exactly. Two points. The lampy sole is basically a squeezed bottle like you have a catcher bottle. First of all, it has no spot of humus to suction. At least there's no evidence that somebody, as a trial, that somebody actually tried to take a bottle, a catcher bottle or whatever, a suction catcher bottle. I don't know what the pressure limits would be. It certainly, there's no evidence that it would be low enough to open upon the pressure that a child might exert when he or she sucks from the spout. There's no evidence of that at all. What if it works in combination, both sucking and squeezing? Would that make any difference? That's a good question. I think Mr. Weiss was asked on that if there were a device, for example, that could be squeezable, but also could be activated by suction. Would that entrench? I think he said yes, to his understanding of patent law. Yes, it would. Well, because even in Force 57 patent, there's a disclosure in your own patent that the expelled from the carton, and this is referring to Carton 20, Figure 2, that the carton, by squeezing the carton to increase its internal pressure, you could also use, assist in getting liquid out. So it does make a difference. You could overcome the pressure not only by sucking, but also in combination with squeezing. I think, I don't know why I have an opinion right off the top of my head, but it seems to me the claim is narrower than that disclosure. In that one you talked about a sole application of a predetermined amount. You didn't say sole application of a predetermined level of suction. In the region of said valve. In the region of valve. So I would say that an argument could be made that squeezing the external carton would not do that, because you wouldn't apply internal pressure. You probably would assist and lower the amount of suction that's necessary. Right? Well, we can argue about that. But you're saying the word sole makes all the difference. It has to be only by the sucking force and not by a corresponding pressure force as well. Precisely. That's what the claim says. We are trying the claim language here. We're not trying the specification of some other environment. Right here, of course, the issue didn't come up because the accused products weren't squeezable. There was no issue on that. They were conventional art. Was there argument to the jury about inherent anticipation by the brown or lampy membranes? No. Absolutely not. There was no argument to the jury about lampy inherent anticipation. There was no evidence to the jury about lampy anticipation. But yet there was an instruction to the jury? There was an instruction over oral objection, over hearing of objection. There was an instruction given to the jury about anticipation. And that one part of anticipation was inherent. If you find all elements of the claim in the prior art, then there's an anticipation. It could be inherently found. That was the instruction that was given. Averman objected to that instruction because Averman did not believe that there was any record sufficient to even put that instruction to the jury. And, of course, we objected to the inherency part of that as well. So my simple submission is I invite you to read. Did any of the three witnesses use the word inherent anywhere in their testimony? I don't believe so. I didn't find it in the record. No. The issue was that that word never came up. It didn't come up. Now how about in the, I guess, counterclaims or answer? Was inherent anticipation injected into the case at the pleading stage? I don't believe so. The pleadings were just the normal notice pleadings that the appendage invalid for one or more of. And then the case went forward. And the real defense that was tendered was on the validity side. There were two defenses that were tendered. One was we're practicing the prior art, and you, jury, do whatever you want. Well, they did. I mean, that's the problem with that. But the other defense was, well, it's a combination of references. And there were three or four combinations of references were offered in an obviousness defense. Now, I can accept it. I can say that is a plausible defense. That would be, perhaps, a plausible defense. It made some sense. You can disagree, or we can all disagree about whether it rises to that level or not. But the problem here is that I think the judge is perhaps infringing on the area of obviousness. I shouldn't say infringing. He's more in an obviousness analysis in this case than he is in a strict inherency analysis. What does he say that leads you to that conclusion? Can you point to some specific language in his opinion where you think he must be talking about obviousness as distinct from anticipation? Well, there is several references in which he talks about what one could... Okay. I'm sorry. Okay. Starting on page 836 on the transcript, the judge does acknowledge that he is now into inherency. 26? Yeah, 836, I think, is when the discussion starts. Okay. And then the language, I think, that I had in mind was that when the judge summarizes on page 11 of the opinion, in the appendix on page 37, where Judge Sebas summarizes, sort of in the middle of the page, he says, "...with skill in the art, why Saussure installed was remarkably consistent on the issue of whether one of skill in the art would have known that LAMPE could be operated solely by suction." So he is now bringing in the knowledge, the external knowledge of experts. Instead of looking at specifically, here is where the reference, LAMPE, points to an operation by suction. He is saying somebody standing back and reading it would read into that. Now that, to me, sounds very much like an obviousness-type analysis. How obvious? Well, then he backs that up. I'm sorry. I'm getting a little nervous. More inherency? Well, we can all argue about where the line is between inherency and obviousness, but I submit to you that there has to be some showing, some evidence that's like peeling back the layers of an onion, perhaps, that it doesn't take skill in the art. It doesn't take some external knowledge. When you read it, you must point to the reference itself and say, here it is. For example, in a classic case, a chemical case, you practice an example. If you practice an example that is given in a pack and you formulate whatever chemical it is that's supposed to be made, why doesn't it come up with this particular chemical? It doesn't say it in the example. But when you carry it out faithfully, you always come up with this particular example. Is that obviousness or inherency? That's inherency. I think that's inherency. Whereas if somebody testified about, well, you know, I read this, and with my skill level, I can prove that you might come up with this, or that it would be obvious, that that discloses also, convincing this material. But what if, as the trial judge said, all three experts pointed in that direction, that the valve could be used by someone? Well, as we pointed out, neither Saussure nor Stahl were testifying about Lampkin. They were testifying about the accused product. So that testimony was not taken in context. So only Weiss's cross-examination testimony, in your view, really speaks to the issue of anticipation. Precisely. And you would say, I guess, inconclusively or contradictorily. Contradictorily, right. Ambiguously. But not to the level of substantial evidence to support a jury verdict. Let me ask you this. What was the gap in time between the submission of the motions, the Jaymall motion, and any argument thereon, and the date of the decision? Do you know? May 06, 24 May 06 is the date of the decision. There was no argument on that. No argument. So when were the motions submitted? It was within January, February, all six. I'm just trying to figure out why he would have treated, at page 12 of his opinion, Saussure and Stahl as if they had been talking about Lampkin, if in fact they were talking about all sorts of other things, and mainly infringement, and not about Lampkin, unless maybe a lot of time had passed and he had forgotten. And I think I can answer that question very briefly if you allow me. I'm over time, but his argument, this is what I said earlier, that I think he applied an obvious analysis. His analysis, Shabazz's analysis, was, well, you can't put a pressure differential across a valve by either suctioning or by squeezing. He just said that as a matter of physics. And we agree, that's true. Absolutely, that's true. And this is, again, close to this obviousness analysis. So he needed, he wanted some support in the record that said that. And so he looked through the record and he found Mr. Saussure and Mr. Stahl saying that. And that's what he said. What did the jury say with respect to obviousness? Nothing. They didn't check the box. But they did check the box of anticipation. Let's hear from the other side. Thank you, Mr. Hartman. Mr. Reeves. Thank you. Obviously, we disagreed with some of the things that Mr. Hartman said, so I'll just kind of jump right into it. To begin with, as far as the quote from Hartman was, we didn't have a problem with that. Essentially, there is no dispute in this case that Landry disclosed every structural limitation that's in the fourth or the second half. There's no dispute about that. I know the judge used that word, undisputed, a lot. But it seems to me as though Weiss's testimony on infringement was two pages. The other expert's testimony on non-infringement covered multiple pages. And that for the judge to have made his decision, he had to accept the Weiss testimony on non-infringement, and he had to accept over the jury's decision, and he had to accept the phrase in response to one question about the inherency that he... What I'm saying is I find it difficult to accept anything that was undisputed in this record. So maybe you should slide off that a little bit. Well, let me put it this way. The only issue that's being contested that's not being met by Landry in this appeal is the soil allocation exemption. They haven't pointed to any other structural element. They haven't said, you know, land up to a flat top. But the judge overturned the jury's verdict of non-infringement, so isn't that whole issue in... Well, maybe I'm... Let me address that. I'll come back to that in the next part of our process here. So the only question here is really, you know, whether a person of ordinary skill in the art reading the Landry records would understand that it's teaching, you know, a bottle such as the 457N that can and is possible to draw the drink on the soil allocation exemption. How would the person so conclude? Wouldn't it depend on what I'll call crudely the stiffness of the membrane? No. Well, let me... First, let me go through the evidence. And this is a sufficiency of evidence point. And the jury had a lot of evidence. First, they had the testimony from Dr. Landry. No, no, no, no, no. You're saying that it was clear to the artisan that the lampy membrane valve would work with suction. Yes. And so I ask you, well, why would that be so clear? Well, for several reasons. First reason... that the lampy membrane would require a stronger differential of pressure on the one side versus the other than could be created by a child sucking on the spout. No. Not possible. So absolutely no evidence for the effect. Well, wait a minute. Wait a minute. We're talking about what's possible and what's not possible, and you're saying it's not possible that the lampy membrane would have required more suction pressure than a child could be expected to apply. Right? That's your position. That's our position. And what's the evidence to support that? The evidence to support that is the 236 valve, the brown 236 valve, which is specifically tied in the lampy membranes. As a particularly suitable valve, is a suction operable valve. How do you know that? Because it's the same valve that Gerber uses in his cups. How do we know that? Because there's testimony that that's a problem. Same type of valve or the same exact resistance to pressure differentials? The same exact resistance to pressure differentials. We have the testimony from Tim Socher who tested that. Was the testing of these respective membranes to reach the conclusion that their resistance to pressure or what I'm calling stiffness was identical? Yes. Not testing per se, but it was testimony from Tim Socher, the inventor of the 236 valve, who testified that it was a suction operable valve. He testified that he had used it in suction applications, and he was describing the valve that was sold to Gerber for use in a sippy cup, and he said that the valve that was sold to Gerber was substantially the same as that valve that he was discussing and saying it was suction operable. The only difference was a little bit about the rim, how it's held in place. But operationally, he testified at trial that that valve operated the same way. Which valve? The Brown 236 valve. Is that the LMS valve? It's the LMS valve. Unfortunately, it got several names at trial, but we're talking about the LMS valve, which is made according to the Brown 236 patent, which is specifically identified in the Lampy. In Lampy. So the LMS valve that Mr. Socher testified to is the Brown valve that's incorporated in the Lampy. Is that correct? I'm sorry, I didn't hear that question. He testified on the LMS valve. Right. That's the same valve you said that was disclosed in Brown, which is incorporated in Lampy. Yes. That's correct. And the testimony that he's talking about is whether it's a squeeze bottle or a sucking application after objection. No, the valve functions the same way. It's basically based on differential pressure. So it's still able to be operated both as a sucking membrane or a squeeze membrane in the bottle. That's correct. So the jury heard that testimony. So there's no question that the valve that Lampy is identifying as a particularly suitable valve is a suction-operated valve. I thought the Brown valve was for dispensing things like liquid detergent. It can be. It can be used in many applications. And Tim Socher discussed that prior to and said that when he invented this valve, he had a lot of different applications in mind. Some of them were for dispensing applications. There was also testimony, I'd like to point out, from Bob Kuhn to kind of tie into that, that he found this valve, the Brown valve, in a dispensing, a soap dispensing. Because that's where it was sold before or wherever he got it. All that testimony had to do with the infringement issue, though, right? From what I could tell from the record, that testimony wasn't being offered in terms of any anticipation defense. Socher and Kuhn and Stull, all that testimony had to do with whether that valve infringed. And they said clearly it did not because there were differences in the membrane, the variable thickness, the rolling cap and all that other business. But you're using that now. I guess it's very confusing because the judge had to reject all that in order to find non-infringement. And what we're saying is that they had to accept the sucking part of it to find inherent anticipation. And I think it's hard to get a handle on that from an intellectual point of view because they seem very inconsistent. Well, I guess my point is that the judge denied their general of non-anticipation, found anticipation, but granted it as to infringement. And so what we're saying is that there is sufficient evidence to affirm and uphold that ruling. But the evidence looks like it's so cherry-picked out of context for exactly the reasons that Chief Judge Robertson says. The testimony that Judge Shabazz quotes, for example, on page 12 of his opinion wasn't even testimony directed toward a defense of anticipation, right? Well, it was certainly testimony that a jury could consider in deciding what was taught by the Landy reference. And that was... He wasn't discussing Landy. He was discussing Landy because he was discussing the vow that Landy teaches as a suitable vow. Landy teaches that Brown 236 vow. And so all that testimony about that Brown 236 vow and what it does and how it works goes directly to Landy because that is incorporated in Landy's... But you would have to reject all of that testimony except the little bit of testimony that says you can suck through that vow as well as pull down through that vow because all the rest of the testimony went to differentiating and distinguishing that vow from the claimed vow. Does that make sense? But not on the basis that it was suction operated. But there are other aspects to this claim, right? Yeah, the other aspect that went through was whether it was a membrane, as that term... Well, in anticipation, you have to meet everything, not just the one element. I mean, that's... I understand. But my point is Judge Chavez essentially ruled against us on that by granting their motion for JMOL. So we still have the jury verdict of anticipation, which we think is fully supportable by the evidence here. So this court doesn't need to reach, although I want to discuss it at the time that I reserve because it's across a bill court, but this court doesn't necessarily need to reach the question of whether membrane was met to uphold the finding of anticipation. The only issue here is Lampey teaches all the structural limitations. The only thing that's on appeal now is would a person of ordinary skill and merit, reading Lampey's reference, understand that it would be possible to draw the drain using only suction. The jury had, first off, the testimony from Dr. Weiss, who said it did. Now, he did try to take it back later on, but he said very clearly in response to a very clear question, yes, it's shown. And then he tried to take it back, or he tried to claim one, and then when I pointed out on cross-exam that that wasn't really the issue, he came up with another reason, and the jury had to wait. They heard two or three different answers. Well, even if the phrase, it's shown, was correctly punctuated with a period, not, as Mr. Hartman suggested, a question mark, what should we construe the statement to mean? What is shown? What is shown where? That Lampey teaches that the valve can be operated by the sole application of suction. But Lampey clearly doesn't say anything of that sort. So how is it shown? How is there any meaning to the word shown when there's no discussion in Lampey or Brown of suction only to operate the valve? It would be the testimony of their own expert witness who said it was shown by Lampey. And the jury couldn't credit that. Well, I'm trying to understand  to construe the witness's statement, it's shown to mean that the Lampey or Brown patent specifications tell you that. Because they don't tell you that. Well, we would take a section of that. We think that the Lampey specification does tell you that. So we're going back to express anticipation? Yes, and that was one point that I wanted to try to make. You better show us where it expressly says that sucking only will do it. What Lampey says is that it's created by a pressure differential. Yeah, but that doesn't say that the level of pressure differential that a child sucking can generate is enough. By itself, alone. It teaches, for example, by squeezing. Those words, for example, means that Lampey is teaching you something. Lampey is teaching you it's not just squeezing. It's other ways to create that pressure differential. Now, this is easily understood technology. This is essentially a Gatorade bottle. So the jury heard that you've got a Gatorade bottle. You're going to be drinking from it. You've got this little valve. It's easily understood technology. For example, it means I'm telling you, I'm Lampey, there's other ways to do this. Now, on top of that, the jury heard extensive testimony from even Plant's own expert, that these kinds of suction-only drinking bottles were well-known. You're going back to 1845 with the Pratt Reference. The Pratt Reference is a bottle that had one of these kind of membrane valves in the slit in it that operated by only suction. And their own expert, Dr. Weiss, said that. That's 1845 technology. On top of that, you have Mrs. Haberman's own UK 045 patent, which also is a suction-operated product. There's no dispute about that. The Freeman Act is another one. So there was a whole variety of patents. This is very old art. It's very well-known. And a person at an ordinary schoolyard, reading the Lampey Reference, seeing that you've got a drinking container in the context of this easily understood technology that you can drink out of... Are you depending for either express or inherent anticipation on some patent other than Brown or Lampey? No. You just referred to some of Mrs. Haberman's other patents. So I get confused whether you were saying, well, they also anticipate, but they weren't presented. There's no testimony about that. Well, we do also maintain the jury-critic kind of anticipation based on the UK 045 patent. But what I was just saying a minute ago went to the issue of how a person at an ordinary schoolyard would read Lampey. I mean, that's the ultimate question. Would a person at an ordinary... Would the jury have sufficient evidence to say that a person at an ordinary schoolyard reading Lampey would understand? Would it be sufficiently disclosed? So your case stands principally on the phrase, for example, by squeezing. It stands on that as well as... Is there anything else said in the Lampey patent that supports what you're asserting other than the phrase, for example, by squeezing? Yes. Lampey says other suitable valves may be used, and it describes the valve as being thin membrane-type valves with slits in them, in addition to the Brown 236 valve. And there was extensive evidence, like I said, going back to 1845, of what a person at an ordinary schoolyard would have known. When a person at an ordinary schoolyard reads the Lampey patent, he reads it knowing all that has come before. And that's not obviousness. That is proper evidence that we can put on it as to what a person of ordinary skill in the art would think as he read this patent. That is also what the testimony from Tim Socher and from Gene Stoll, who I haven't talked about, but he also talked about how these valves work. So the bottom line is what you're saying is a person of ordinary skill in the art would approach this art and say, by necessity, it's necessarily there that when you have any valve, you can use a pushing force or you can use a pulling force to extract liquid. He would necessarily know that, and he would necessarily know that that valve can be operated only by suction if it was Socher's art, that it would be possible. And he would know that based upon all the prior art going back to 1845, and he would know it because the 236 valve is in fact a suction-operated valve. Lampy is telling you, go get one of these suction-operated valves and put it in my container. And if you do that, you necessarily wind up with a container that you can operate by suction only, if you so desire. Or both. Or both. Or squeezing only. Or squeezing. So there are three possibilities, really. Right. Or you can, I suppose, drop it on the ground in any way that you're comfortable with. But this whole argument depends on the fact that the only element or the only limitation in question is the sucking only. That you believe there's substantial evidence to demonstrate that all the other limitations of Claim 1 have been met. Well, not only that. I mean, we believe that that should be clear from Dr. Weiss's own testimony, because the only thing that was argued over was the suction-only limitation. But that's also the only thing that's been appealed. I mean, I would maintain that that has been conceded by the appellants in this case. Well, except the judge didn't do that. The judge reversed. So I guess to accept what... I mean, I think we're reviewing the judge's decision to overturn the jury, and the judge had to rely on substantial evidence. And if the... So it's more difficult than I think what you're arguing. But... Well, we think that if you would go back and read through Dr. Weiss's testimony, you would see I went through each one of the elements, and these are the only ones where you... All right. Now, I have a suggestion for you, which is that we leave the cross-appeal as written in the briefs in order to have some ability to bring these proceedings to a conclusion. Each of you has briefed the cross-appeal issues, and he hasn't argued the cross-appeal issues. You haven't yet had a chance to argue the cross-appeal issues either. So my suggestion is we leave the cross-appeal issues to the argument as set forth in the corresponding briefs of both sides, and hear rebuttal argument briefly from Mr. Hartman on the direct appeal issues. Mr. Hartman. We're happy to rest the argument on the cross-appeal on the papers. You don't have any choice, because having not let him argue, we can't let you say anything about it. There are four points I wanted to make briefly. First of all, the inheritance standard is not that it may be possible or that it is possible to change something. It must necessarily be in the reference. We're quite aware of that. So, point one. Point two is the LMS valve, the so-called LMS valve, that is not the same as the Brown valve. It was changed. There's testimony in the record that it was changed. And it was changed. The membrane was changed, and the mounting was changed. Yes, Mrs. Bachman testified that it was changed. It's an hour brief, but I just referred to one section of the appendix. It's in 1493 to 1494. Mrs. Bachman, who was the developer of the valve, she worked with LMS, and she said, well, the whole valve itself, the valve head area is very unique, and it's designed very specifically. By changing the geometry of the valve head, it allows us to change the character of the valve. I mean, they had to design the valve so that it would not spill when it was shaken, and at the same time, it allowed a fairly minimal amount of delta P, or pressure change suction, to operate the valve, to make it come over. So, these are all very finely tuned valves, and that was the testimony. You're saying it's not the Brown valve? It's not the Brown valve. Well, I guess the record will have to speak for itself on it. I mean, this is, you know, on page 1455, Mrs. Bachman says, well, and that was refined until we could make that. Basically, we could mock this thing up and make it perform the way it was supposed to. In other words, it wasn't going to spill like it was drinking. So this is the point. I mean, they had to fix it so that it would work. I don't deny that somebody might start with a Brown design, and then fool around with it, alter it, adapt it to a suctioning operation. But if that, and that's what the record shows, if that happens, that is then more evidence of correct functioning. Now the question would become, well, how much redesigning had to be done? And, you know, does that somehow, is that somehow proof that that Brown renders Abelman obvious? But it's not proof of inherence. My, um, my last point was that the entire argument that we heard just now is contrary to what we were told to be here, told to have analyzed. What it said, Brown is not, does not, say suctioning. I mean, this is the same inventor, this is Mrs. Blackman, going to the patent office, and she said, and she said, this was on page 29. So what's the, what's the implication? Are they stopped because of what they said in the patent application they prosecuted from arguing, in this case, what they now argue? I, I, I ask myself that, frankly, whether it was a stop, whether it was, I don't think it's a stop. It is a statement, an inconsistent statement, made under oath. It's an admission against English. It certainly is, is, is strong evidence to suggest that it's not inherent. I remember the argument is an inherent statement. Here's a statement under oath by the same inventor that Brown cannot generate sufficient force to operate without, such that these references would show particles that would be non-functional if made into drinking cups, as we saw in the case. He says Brown results in non-functional cups to the patent office, and here we have Gerber saying, oh, we see it all in Brown. It, it just makes no sense. So the evidence, I would suggest to you that it's not substantial enough to support the verdict. All right. We thank both counsel. We'll go back over the evidence very carefully to what we can with it. Thank you very much. Thank you. Thank you.